United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES G COLLINS,

    Plaintiff,

v.

COUNTY OF MONTEREY,

    Defendant.

Case No. 19-cv-01214-NC

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 69

Plaintiff James G. Collins seeks summary judgment in this quiet title action over his 30-acre parcel of property. *See* Dkt. No. 69. At issue is whether a conservation and scenic easement granted to defendant County of Monterey by the original owners of the property had been terminated. Because there are genuine issues of material fact as to whether the easement was terminated, the Court DENIES Collins's motion for summary judgment.

**I.    Factual Background**[1]

In 1966, the original owners of an undeveloped 30-acre parcel of land in Carmel, California (the "Property")—also known as the De Amaral Preserve—donated the parcel

---

[1] Much of the background facts recited by Collins reflect allegations in his second amended complaint. Monterey, however, "largely concurs" with Collins's statement of facts and previously admitted to those factual allegations. *See* Dkt. No. 23 (answer to first amended complaint). The Court will therefore treat Collins's recitation of facts as undisputed except where indicated.

to the Monterey County Foundation for Conservation ("Foundation"). The Foundation subsequently granted Monterey a Conservation and Scenic Easement Deed (the "Easement") a year later. *See* Dkt. No. 69-1, Ex. A. The Easement contains a termination provision, Article 7, which provides in relevant part:

> In the event that the State of California, or any political subdivision thereof, should pass legislation pursuant to Article XXVIII of the Constitution of the State of California, or should pass legislation such as the California Land Conservation Act of 1965, or other legislation for the purpose of restricting the use of real property to conserve and maintain natural scenic beauty, open space lands, natural resources and agricultural land for plant and animal production, which said legislation shall restrict, or would by agreement . . . restrict, the use of said property for scenic and recreational uses or for the use of natural resources or for the production of food and fiber, the [Foundation], or its successors in interest, shall have the option to have the [Property], or a portion thereof, subjected to the restrictions created by such legislation, free from the restrictions imposed by this conveyance.
>
> Should [the Foundation], or its successors in interest, desire to exercise the option to restrict the use of a portion of or all of [the Property] pursuant to such legislation, [the Foundation], or its successors in interest, shall give written notice to [Monterey] of the exercise of such option.
>
> Upon the giving of such notice, this [Easement], as to the portion of the property subjected to such legislation or which will be subject to such legislation by the agreement of the [Foundation], or its successors in interest, shall immediately cease and determine and revert to and vest in the [Foundation], or its successors in title, upon being subject to such legislation.

*Id.* § 7 (line breaks added).

In 1977, the Foundation granted the Property to the Behavioral Sciences Institute

2

1  Foundation ("BSIF").  BSIF, in turn, sold the Property to Walter and Loretta Warren in
2  1989.  The Warrens recorded a Notice of Termination of the Conservation and Scenic
3  Easement Deed in 1990.  *See* Dkt. No. 69-1, Ex. B ("1990 Termination).  The 1990
4  Termination stated that it was "based upon the enactment of the California Coastal Act
5  (Public Resources Code §§ 30,000–30,900) . . . ." *Id.* at 1.

In 1994, Collins, a resident of Kentucky, purchased the Property from the Warrens. Eight years later, Collins began his efforts to obtain permits and authorization to build a home on the Property.  Monterey rebuffed his efforts, eventually concluding in 2018 that it could not grant Collins the necessary permits and authorization until the status of the Easement was resolved.  During the pendency of this lawsuit, Collins recorded a Notice of Termination of Conservation and Scenic Easement Deed on October 17, 2019.  *See* Dkt. No. 69-1, Ex. F ("2019 Termination").  That notice stated that Monterey County Ordinance § 20.36.040 "qualifie[d] as the legislation under Article 7 of the [Easement]." *Id.* at 1.

## II. Legal Standard

Under Federal Rules of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Under Rule 56, the moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Once the moving party meets its burden, then the non-moving party must cite "particular parts of materials in the record" showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A "genuine issue" exists if a reasonable jury could find for the non-moving party.  *E.g.*, *Open Text v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 428365, at *1 (N.D. Cal. Jan. 30, 2015).  On summary judgment, the Court does not make credibility determinations or weigh conflicting evidence, as these determinations are left to the trier of fact at trial.  *Bator v. State of Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994).

3

## III. Discussion

### A. Jurisdiction

Amicus curiae Gwyn de Amaral and other Carmel residents argue that the Court lacks jurisdiction because this lawsuit no longer presents a case or controversy under Article III of the United States Constitution. *See* Dkt. No. 75. Although both Collins and Monterey disagree with amici, the Court has "an independent obligation to determine whether" jurisdiction exists. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Amici argue that no case or controversy exists because Monterey is not a truly adverse party, citing Monterey's "neutral" position as to whether the Easement exists. *See* Dkt. No. 75-1. Amici, however, overstate Monterey's neutral posture. Monterey is the grantee of the Easement and has consistently argued that the Easement has not been terminated. *See* Dkt. No. 80. This position is directly adverse to Collins and an Article III case or controversy therefore exists.

### B. Quiet Title

"The purpose of a quiet title action is to finally settle and determine the parties' conflicting claims to the property and to obtain a declaration of the interest of each party." *City of Santa Maria v. Adam*, 211 Cal. App. 4th 266, 298 (2012). "The quiet title claimant has the burden of proof to show every element of the right claimed." *Id.* (citing *Tulare Irrigation Dist. v. Lindsay-Strathmore Irrigation Dist.*, 3 Cal. 2d 489, 547–48 (1935)). A quiet title action requires the claimant to provide: (1) a description of the property; (2) the claimant's title and basis of the title; (3) the adverse claims to the title; and (4) the date as of which the determination is sought. *See* Cal. Code Civ. Proc. § 761.020.

Collins claims that the Easement was terminated in 1990 by the Warrens or, alternatively, by the 2019 Termination. In either case, whether the Easement was terminated turns on the terms of the easement deed. *See City of Manhattan Beach v. Superior Court*, 13 Cal. 4th 232, 238 (1996) (analyzing terms of a railway easement deed).

As recounted above, the Easement allows the Foundation or its successors in interest to terminate the Easement under specific conditions. Put in simple terms, Article 7

4

allows termination of the Easement when California or Monterey passes conservation legislation which restricts, or would by agreement restrict, the use of the Property for "scenic and recreational uses or for the use of natural resources or for the production of food and fiber." Easement § 7.

Collins asserts that the passage of either the California Coastal Act, Cal. Pub. Res. Code §§ 30000 *et seq.*, or Monterey County Ordinance § 20.36.040 triggered Article 7 and allowed termination of the Easement. Collins then concludes that because the Property is subject to both the California Coastal Act and Monterey County Ordinance § 20.36.040, the Easement was properly terminated by the Warrens in 1990 or, alternatively, in 2019.

The Court need not determine whether the California Coastal Act or Monterey County Ordinance § 20.36.040 are "such legislation" as defined in Article 7, however, because even if they are, Article 7 only allows termination of the Easement if "said legislation *shall restrict*, or would by agreement . . . restrict, the use of [the Property] for scenic and recreational uses or for the use of natural resources or for the production of food and fiber . . . ." Easement § 7 (emphasis added). In other words, it is not enough that California passed the Coastal Act or that Monterey passed § 20.36.040. Article 7 permits termination of the Easement only if those laws actually restrict the use of the Property or the Foundation's successors in interest agreed to restrict the use of the Property for scenic and recreational uses or for the use of natural resources or for the production of food and fiber. Collins, however, has provided no evidence of such a restriction or agreement.

Therefore, there is a dispute of material fact as to whether the Easement has been terminated.

### C. Good Faith Purchaser

In the alternative, Collins argues that he was a good faith purchaser when he purchased the Property. According to Collins, Cal. Civ. Code § 1107 applies here to terminate the easement.

Cal. Civ. Code § 1107 is California's recording statute. That statute provides that "[a] good faith encumbrancer for value who first records takes its interest in the real

5

property free and clear of unrecorded interests." *Triple A Mgmt. Co., Inc. v. Frisone*, 69 Cal. App. 4th 520, 530 (citing Cal. Civ. Code § 1107). But here, the Easement was recorded prior to Collins's purchase. *See* Dkt. No. 23 ¶ 10, Dkt. No. 67. Moreover, whether Collins was a good faith purchaser is a disputed issue of fact.

### D. Statutes of Limitations

Next, Collins contends that various statutes of limitations bars Monterey from objecting to his quiet title action. Statutes of limitations, however, are defenses and act to prohibit a party from bringing claims past the limitations period. *See Fox v. Ethicon Endo-Surgery, Inc.*, 33 Cal. 4th 797, 806 (2005). Monterey is not bringing any claim in this case and the statutes of limitations are inapplicable here.

### E. Equitable Estoppel

Finally, Collins argues that equitable estoppel prevents Monterey from challenging the termination of the Easement.

"[F]our elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *Driscoll v. City of Los Angeles*, 67 Cal. 2d 297, 305 (1967). Although the government is not immune from estoppel, "it must not be applied if doing so would effectively nullify a strong rule of policy, adopted for the benefit of the public." *Feduniak v. Cal. Coastal Comm'n*, 148 Cal. App. 4th 1346, 1359 (2007). "The existence of an estoppel is generally a factual question" unless "the facts are undisputed and only one reasonable conclusion can be drawn from them." *Id.* at 1360.

Actual knowledge is not always required for equitable estoppel. *Id.* at 1361. "[K]nowledge of the pertinent facts may be imputed where the circumstances show that one ought to have known them, and this is especially so when the party to be estopped was negligent or made affirmative representations related to those facts." *Id.* (citing *Long*

6

*Beach v. Mansell*, 3 Cal. 3d 462, 491 (1970)). When a governmental entity is the estopped party, estoppel only applies when a government official with authority has knowledge of the relevant facts. *See Strong v. Cnty. of Santa Cruz*, 15 Cal. 3d 720, 727 (1975) (no estoppel where "[t]here [was] no evidence that any county official in authority was aware" of the underlying facts").

Here, at a minimum, there is a dispute of fact as to whether Monterey's Board of Supervisors or any county official with authority to challenge the 1990 Termination actually knew or should have known about the termination. Collins points to tax assessor maps and county land use plans that omit reference to the Easement. *See* Dkt. No. 69 at 19–20. But those documents were not prepared by the Board of Supervisors or other county officials with authority to challenge the 1990 Termination. Collins provides no evidence that someone with authority had actual or imputed knowledge of the 1990 Termination. Therefore, a dispute of material fact exists as to equitable estoppel.

**IV. Conclusion**

The Court DENIES Collins's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: February 20, 2020 _____
NATHANAEL M. COUSINS
United States Magistrate Judge