UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES G COLLINS,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF MONTEREY,<br><br>    Defendant. | Case No. 19-cv-01214-NC<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER BENCH TRIAL** |

James Collins argues that the Conservation and Scenic Easement on his property in Monterey County is terminated, and he should thus prevail in this quiet title action. Alternatively, Collins argues that even if his predecessors in interest did not validly terminate the easement, he is a good faith purchaser for value without notice of the easement, and Defendant County of Monterey should be equitably estopped from enforcing the easement.

On April 6, 2021, the Court held a bench trial on these three issues. The Court held the trial by Zoom videoconference, with the parties' consent. The Court makes the following findings of fact and conclusions of law.

**I.   PROCEDURAL HISTORY**

This Court held a three-day bench trial from April 6, 2021, through April 8, 2021. Collins seeks a declaratory judgment of quiet title on his property as to the Conservation

and Scenic Easement. Specifically, he seeks a determination that the Easement has been properly terminated or is otherwise not effective to limit his rights to use his property. The County contends that neither the purported 1990 nor 2019 Notice of Termination meets the conditions precedent required for unilateral termination under Article 7 of the Conservation Scenic Easement. *See* Dkt. No. 147 at 1. Thus, the County contends that the Easement remains in effect, and that Collins is not entitled to any requested relief.

At trial, Plaintiff's counsel called James Collins to testify regarding his purchase and the history of the Property, Wendy Strimling as his witness to testify as to her role as Assistant County Counsel of the County in evaluating Mr. Collins' application to build a home on the Property, Anna Quenga as his witness to testify as to her role as a planner with the County and the scope of development restrictions imposed on RC/CZ properties, and Michael Bennett as his witness to testify about the assessor's maps prepared for the Collins Property.[1]

The County called Maria Rico-Haro as an expert witness to testify about the process for recordation of documents, and the County called Christopher Daniel as its expert witness to testify about the appraisal value of Collins' property. All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 12, 17. This Court has subject matter jurisdiction over the quiet title claim based on diversity. *See* Dkt. No. 60; *see also* 28 U.S.C. § 1332(a).

## II. STANDARD OF REVIEW

"In an action tried on facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1).

## III. FINDINGS OF FACT

### A. The Property and History of Site Ownership

Collins' Property ("the Property"), located at 83 Mount Devon Road, Carmel

---

[1] The Court disregards any arguments made by Plaintiff's counsel in closing argument about the Bennett deposition testimony.

Highlands in Monterey County, California, presently consists of approximately 21 acres of undeveloped land. *See* Trial Transcript ("TT") Vol. 2, 222:21, 223:8. The Property was first owned by Allan Prese in 1960, and Prese later transferred the property to D'Ambrogio in 1962. TT Vol. 1, 30:24–25, 31:1; Ex. 31 at 5. In 1966, D'Ambrogio donated the parcel to the Monterey County Foundation for Conservation, and the Foundation subsequently granted the County of Monterey a Conservation and Scenic Easement Deed (the "Easement") in 1967. TT Vol. 1, 31:21–24; Ex. 31 at 5; Ex. 3. In 1977, the Foundation granted the Property to the Behavioral Sciences Institute Foundation, and BSI later sold the Property to Walter and Loretta Warren in 1989. Ex. 14 at 4.

### B.     Conservation Scenic Easement

The Conservation and Scenic Easement Deed provides that "no structures of any kind will be placed or erected upon said described premises, except structures, lines and other facilities necessary to maintain a water, drainage or sewer system, utilities consisting of telephone, power, and cable television lines, utility roads necessary to serve same, under, on or over said land, bridges, fences, and other structures reasonably necessary and incidental to the construction, maintenance, and operation of an undeveloped scenic area, including but not limited to roads, riding and hiking trails, fireplaces and picnic areas." Ex. 3 "Easement" § 1; TT Vol. 2, 157:3–14, 158:21–25. The Easement Deed further provides that "except for the construction, alteration, relocation and maintenance of roads and riding and hiking trails, the general topography of the landscape shall be maintained in its present condition and no excavation or topographic changes shall be made, except to prevent erosion or damage to the land." Easement § 3; TT Vol. 2, 159:20–25, 160:1.

The Easement contains a termination provision, Article 7, which provides in relevant part:

> In the event that the State of California, or any political subdivision thereof, should pass legislation pursuant to Article XXVIII of the Constitution of the State of California, or should pass legislation such as the California Land Conservation Act of 1965, or other legislation for the purpose of restricting the use of real property to conserve and maintain natural scenic beauty, open space lands, natural resources and agricultural land for plant and animal production, which said legislation shall restrict, or would by agreement . . .

> restrict, the use of said property for scenic and recreational uses or for the use of natural resources or for the production of food and fiber, the Grantor, or its successors in interest, shall have the option to have the [Property], or a portion thereof, subjected to the restrictions created by such legislation, free from the restrictions imposed by this conveyance.
>
> Should Grantor, or its successors in interest, desire to exercise the option to restrict the use of a portion of or all of [the Property] pursuant to such legislation, Grantor, or its successors in interest, shall give written notice to [County of Monterey] of the exercise of such option.
>
> Upon the giving of such notice, this [Easement], as to the portion of the property subjected to such legislation or which will be subject to such legislation by the agreement of the Grantor, or its successors in interest, shall immediately cease and determine and revert to and vest in the Grantor, or its successors in title, upon being subject to such legislation; the intent of this clause being that in the event that the subject property, or a portion thereof, shall become restricted pursuant to such legislation, that the restrictions placed upon Grantor, or its successors in title, on said real property shall become null and void and of no further force and effect.

Easement § 7 (line breaks added).

### C.   Collins' Acquisition of the Property

Collins has prior experience purchasing and selling approximately four different pieces of real property. TT Vol. 1, 46:8–10. In 1994, Collins, a resident of Kentucky, purchased the 21-acre Property from the Warrens for $129,000. TT Vol. 1, 17:20–21, 25. Collins' "price per acre was [approximately] $6,000[,] because it's not a buildable lot. That was a parcel that, when it was sold, it was not sold to be built. The zoning did not allow a home. So[,] he purchased a property that was not buildable at the time." TT Vol. 2, 232:13–17. It was Collins' understanding, from both his realtor and the seller, that the Property could not be developed for residential purposes. TT Vol. 1, 47:5–8. By contrast, an appraisal of comparable properties in the area showed that the fair market value of the Property is approximately $275,000–$300,000, making the *value* per acre somewhere between $13,000–$15,000 per acre without the existence of an Easement. *See id.* at 228:11 (emphasis added).

After Collins obtained title insurance, the insurance company conducted a title search, and the search did not disclose the existence of any active easements encumbering the property. TT Vol. 1, 18:9–10. The title documents list several easements, and eventually the Easement became an obstacle to Collins' development plans. *See* TT Vol.

1, 18:15.  In 2014, Collins began his efforts to obtain permits and authorization to build a home on the Property.  TT Vol. 1, 8:13; Ex. 14 at 6.  The County of Monterey rebuffed his efforts, eventually concluding in 2018 that it could not grant Collins the necessary permits and authorization until a judicial determination resolved the status of the Easement.  *See* Ex. 14.

As a result, Collins filed a claim with the title insurance company after the last board hearing in 2018.  TT Vol. 1, 18:22–23.  Collins opined that although the title company found a terminated easement, they did not notify him because "they don't report terminated easements."  TT Vol. 1, 20:8, 11.  The title insurance agent arranged a new property appraisal, and later notified Collins that the title insurance company would "terminate or cancel [the] policy and . . . issue a check for $129,000," because "a preliminary appraisal showed [his] property was worth in excess of one million dollars."  *Id.* 19:2–8.

### D. Legislation Relevant to the Property

#### 1. California Coastal Act

The California Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.) created a "comprehensive scheme to govern land use planning for the entire coastal zone of California," *Yost v. Thomas*, 36 Cal. 3d 561, 565, 572–73 (1984), by setting "'minimum standards and policies' for localities to follow in developing land use plans," *DeVita v. County of Napa*, 9 Cal. 4th 763, 775 (1995); *McAllister v. County of Monterey*, 147 Cal. App. 4th 253, 272 (2007).  The Coastal Act regulates "'development' that results in a change in the intensity of use of or access to land" within the Coastal Zone, and requires that any person who undertakes development within the Zone first obtain a Coastal Development Permit ("CDP").  *Greenfield v. Mandalay Shores Community Assn.*, 21 Cal. App. 5th 896, 898 (2018).  Thus, no land use restrictions are imposed under the Coastal Act itself, until a CDP is issued as the result of a property owner voluntarily developing real property within the Coastal Zone.  The California Coastal Act requires county implementation, *see* TT Vol. 2, 170:14–21, and the Land Use Plan in this case is "part of

the local coastal program which implements the coastal act," TT Vol. 2, 148:17–18.

### 2. Monterey County Ordinance

Adopted in 1983, the Monterey County Zoning Coastal Implementation Plan Ordinance, known as the Resource Conservation Coastal Zone or "RC/CZ" zone, is a local implementation of the California Coastal Act. *See* TT Vol. 2, 148:17–18. The RC/CZ zoning ordinance requires a coastal administrative permit, unless exempt, for the following *principal* uses: "Resource dependent educational and scientific research facilities uses, and low intensity day use recreation uses such as trails, picnic areas and boardwalks; Restoration and management programs for fish, wildlife, and other physical resources." Ex. 7, Monterey County Ordinance § 20.36.040.

The zoning ordinance allows *conditional* uses, subject to a coastal development permit, for "utility facilities such as pipe lines, underground and overhead utility extensions, and water tanks, but not including public/quasi-public uses such as schools, fire stations, or parking lots." Ex. 7, Monterey County Ordinance § 20.36.050. The exempt developments, those properties that do not require a coastal development permit, are listed in § 20.70.120; Section 20.70.115 allows for an interpretation of a permit requirement. *See* TT Vol. 2, 143:20–23. Exempt properties "depend on the development being proposed." TT Vol. 2, 144:1. Because Collins proposes to build a house on the Property, it does not qualify as exempt, and he would require a permit. *Id.* at 144:15–17.

### 3. The Effect of the Zoning Ordinance

The Resource Conservation Coastal Zone "is a very restrictive zoning designation. There's very limited development allowed within [it]." TT Vol. 1, 98:15–17. The Collins Property is designated as an RC/CZ zone. *See* TT Vol. 2, 149:15–16. "The resource conservation zone on the Property, they would have to follow whatever uses that were allowed, that were listed." TT Vol. 2, 170:2–4. The "County's position is that termination of the easement did *not* result in the intensification of use because the [P]roperty was zoned Resource Conservation, which restricts development on the property in a manner similar to the easement." Ex. 19 at 6; TT Vol. 2, 140:4–19.

6

### E. First Notice of Termination

Walter and Loretta Warren recorded with the Monterey County Recorder a Notice of Termination of the Conservation and Scenic Easement Deed on December 24, 1990. Ex. 4 ("1990 Termination"). The 1990 Termination stated that it was "based upon the enactment of the California Coastal Act (Public Resources Code §§ 30,000–30,900)," pursuant to the terms of Article 7 in the Easement Deed. *Id.*

### F. Second Notice of Termination

During the pendency of this lawsuit, Collins delivered to Valerie Ralph, the Clerk of the Board of Supervisors, a Notice of Termination of the Conservation and Scenic Easement Deed on October 17, 2019. Ex. 5 ("2019 Termination"). That 2019 Termination stated that Monterey County Ordinance § 20.36.040 "qualifie[d] as the legislation under Article 7 of the Easement Deed and authorize[d] termination of the Easement Deed." *Id.*

### G. Facts Not Bearing on the Court's Finding

The Court corrects two statements made in its February 20, 2020, Order Denying Summary Judgment at ECF 82: First, this case is not about the De Amaral Preserve. It is about a specified property, identified by plat number, and the Conservation and Scenic Easement on that Property. *See* Dkt. No. 82 at 1. Second, the Collins Property is 21 acres, not 30 acres. *See id.*

The De Amarals and other neighbors may be interested in the outcome of this trial, but they were not parties in this case, and this case did not adjudicate their property rights. Further, the parties stipulate that the title insurance issued to Collins at the time of his purchase of the Property did not disclose the Easement or make any reference to a "De Amaral Preserve." Dkt. No. 136 at 3. Accordingly, the Court makes no finding as to the De Amarals or the adequacy of the title company's practices.

## IV. CONCLUSIONS OF LAW

### A. The Court Denies the County's Rule 52(c) Motion

At the close of Plaintiff's evidence, the County moved for judgment on partial

7

findings under Federal Rule of Civil Procedure 52(c). *See* TT Vol. 2, 201:21. Specifically, the County argued that Collins cannot prove reasonable reliance based on a change to an assessor's map, *id.* at 203:3, and that because Quenga testified to the differences between restrictions in the Easement Deed and the RC/CZ zoning, Collins failed to meet his burden, *id.* at 203–204.[2]

Judgment on partial findings should be granted only where a party has been fully heard on an issue that is dispositive to the success of its claim or defense, and the court has found against it. *See* Fed. R. Civ. P. 52(c). The court may enter judgment on partial findings "at any time that it can appropriately make a dispositive finding of fact on the evidence." *Id.* (advisory committee notes on 1991 amendment). Having made the findings of fact described in detail above, the Court declines to enter judgment in favor of the County under Rule 52(c). Rather, as described in detail below, the Court concludes that the Conservation and Scenic Easement is terminated, and that Collins prevails in his Quiet Title Action against the County of Monterey.

**B. Quiet Title**

"The purpose of a quiet title action is to finally settle and determine the parties' conflicting claims to the property and to obtain a declaration of the interest of each party." *City of Santa Maria v. Adam*, 211 Cal. App. 4th 266, 298 (2012). "The quiet title claimant has the burden of proof to show every element of the right claimed." *Id.* (citing *Tulare Irrigation Dist. v. Lindsay-Strathmore Irrigation Dist.*, 3 Cal. 2d 489, 547–48 (1935)). A quiet title action requires the claimant to provide: (1) a description of the property; (2) the claimant's title and basis of the title; (3) the adverse claims to the title; (4) the date as of which the determination is sought; and (5) a prayer for the determination of title of the plaintiff against the adverse claims. *See* Cal. Code Civ. Proc. § 761.020.

//

---

[2] Counsel for Collins also moved for directed verdict under FRCP 52(c), TT Vol. 2, 201:12, but the Court only acknowledges the Defense's motion after the close of Plaintiff's evidence, *id.* at 202:12.

8

### 1. Termination of Easement

"Conservation easements are negative easements that impose specific restrictions on the use of the property they cover." *Wooster v. Department of Fish & Game*, 211 Cal. App. 4th 1020, 1026 (2012) (internal citations omitted). A conservation easement is a limitation in a deed, will, or other instrument in the form of an easement, restriction, covenant, or condition by the owner of land that is binding on successive owners for the purpose of retaining the land predominantly in its natural, scenic, historical, agricultural, forested, or open-space condition as specified in the instrument creating or transferring the easement. *See* Cal. Civ. Code § 815.1, 815.2(d). Just as easements can be created by express agreement between the parties, an easement can similarly be terminated by the terms of an easement agreement or deed. *See Wooster*, 211 Cal. App. 4th at 1027; *see also City of Manhattan Beach v. Superior Court*, 13 Cal. 4th 232, 260 (1996) (analyzing terms of a railway easement deed).

Here, the Easement restricts structures from being erected on the property, and prohibits excavation and topographic changes, with the exception of those "reasonably necessary and incidental to the construction, maintenance, and operation of an undeveloped scenic area," such as roads, riding and hiking trails, fireplaces and picnic areas." Easement § 1; TT Vol. 2, 159:5. Article 7 of the Easement Deed allows the Grantor to terminate the Easement under specific conditions. By its terms, the Easement allows the Foundation, or its successors in interest, to terminate the Easement when California or Monterey *passes* conservation legislation which *restricts*, or would by agreement restrict, the use of the Property for "scenic and recreational uses or for the use of natural resources or for the production of food and fiber." Easement § 7 (emphasis added).

The California Coastal Act defines "development" to include: the placement or erection of any solid material or structure; discharge or disposal of any dredged material or of any gaseous, liquid, solid, or thermal waste; grading, removing, dredging, mining, or extraction of any materials; change in density or intensity of use of land. Cal. Pub.

1    Resources Code § 30106.  The Monterey County RC/CZ zoning ordinance allows "only
2    such development that can be achieved without adverse effect and which will be
3    subordinate to the resources of the particular site and area."  Ex. 7, Monterey County
4    Ordinance § 20.36.010.  As such, development is prohibited unless a property owner is
5    exempt, or obtains a required coastal administrative permit for principal or conditional
6    uses.  *See id.* §§ 20.36.040, 20.36.050.

7    Here, Collins asserts that the RC/CZ zoning ordinance §20.36.040 restricts the use
8    of the Property, and therefore triggers the condition in Article 7 of the Easement deed
9    required for unilateral termination.  The Court agrees.  The County argues that the zoning
10   ordinance is not *more* restrictive than the restrictions in the Easement Deed, and it
11   therefore cannot be considered "restrictive" for purposes of triggering the unilateral
12   termination in Article 7.  *See* TT Vol. 2, 155:22–25.  But the Court finds that the degree of
13   restriction is immaterial to this analysis.  Rather, the Easement Deed may be unilaterally
14   terminated when conservation legislation is both passed and when it restricts the use of the
15   Property; it need not be the most restrictive.  The Court finds that the Monterey County
16   Ordinance § 20.36 does so here.

17   Although the California Coastal Act alone (the basis for the Warren's 1990
18   Termination) may not have been sufficient to trigger the termination provision in the
19   Easement Deed, the Court finds that the Monterey County Zoning Ordinance is the type of
20   qualifying legislation that would allow for the termination of the Easement.  The Property
21   is not intensified, despite any easement termination, because it is still restricted by RC/CZ
22   zoning.  *See* Ex. 19 at 6.  The Court also finds that Monterey County Ordinance § 20.36
23   constitutes local implementation of the California Coastal Act.  Thus, because the
24   Monterey County Ordinance restricts the use of the Property pursuant to Article 7 of the
25   Easement, it satisfies the condition precedent required to trigger unilateral termination of
26   the Easement.  Furthermore, Collins' 2019 Termination invoked the Monterey County
27   Ordinance as the basis of the Easement's termination.  Thus, the Court finds that the 2019
28   Notice of Termination resulted in effective termination of the Easement because it is based

10

1    upon the Monterey County Zoning Ordinance.

## C. Good Faith Purchaser for Value Without Notice

In the alternative, Collins argues that he was a good faith purchaser for value when he purchased the Property. "The elements of bona fide purchase are payment of value, in good faith, and without actual or constructive notice of another's rights" or an easement contract. *See C & C Properties v. Shell Pipeline Company*, No. 14-cv-01889-DAD-JLT, 2019 WL 6341047, *9 (E.D. Cal. Nov. 27, 2019) (citing *Melendrez v. D & I Inv., Inc.*, 127 Cal. App. 4th 1238, 1251 (2005); *Gates Rubber Co. v. Ulman*, 214 Cal. App. 3d 356, 364 (1989)). If the defendant claims that a plaintiff was not such a good faith purchaser, the burden is on the defendant to establish "that [plaintiff] is chargeable with actual or constructive notice of the existence of the easement." *Johnson v. Cella*, 122 Cal. App. 2d 72, 74 (1953).

Here, the Court finds that the County's evidence establishes that Collins was chargeable with notice of the Easement's existence. Although the Warrens did not disclose the prior existence of an easement on the Property, Collins did not present adequate evidence that he was without notice. At the time he purchased the Property, the price per acre was far below fair market value, thereby reflecting the restrictions and encumbrances on the Property. The Property was not only encumbered by an easement, but Collins was also aware of the zoning restrictions on the Property. Furthermore, the Court finds that Collins was on notice of the Easement's existence once his title insurance company returned to him the $129,000 paid. Based on his prior experience investing and purchasing properties, Collins also should have known that the Property was not a buildable parcel. Therefore, the Court finds that Collins was not a good faith purchaser for value without notice.

## D. Equitable Estoppel

Collins argues that the County's actions led him to believe that the Easement was previously terminated, so it should be equitably estopped from enforcing the Easement. To support a finding of equitable estoppel, "(1) the party to be estopped must be apprised

of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *Strong v. County of Santa Cruz*, 15 Cal. 3d 720, 725 (1975); *Driscoll v. City of Los Angeles*, 67 Cal. 2d 297, 305 (1967). When a government entity is the estopped party, the knowledge of the facts that form the basis of the estoppel must reach someone in authority. *Strong*, 15 Cal. 3d at 727. When county agents act in the county's name, their knowledge may be imputed to the county. *See Escondido Union School Dist. v. Casa Suenos De Oro, Inc.*, 129 Cal. App. 4th 944, 968 (2005); *County of Orange v. Carl D.*, 76 Cal. App. 4th 429, 440 (1999). The detrimental reliance must be reasonable. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 35 (1995).

In cases involving equitable estoppel against a government entity, an additional factor must be considered: "the court must weigh the policy concerns to determine whether the avoidance of injustice in the particular case justifies any adverse impact on public policy or the public interest." *Schafer v. City of L.A.*, 237 Cal. App. 4th 1250, 1261 (2015); *see also West Washington Properties, LLC v. Department of Transportation*, 210 Cal. App. 4th 1136, 1149–50 (2012); *Golden Gate Water Ski Club v. County of Contra Costa*, 165 Cal. App. 4th 249, 259–63 (2008). The burden rests on the party asserting estoppel to prove to prove all elements "by evidence having some reasonable tendency to establish the fact." *General Motors Acceptance Corp. v. Gandy*, 200 Cal. 284, 295 (1927).

Here, the Court finds that Collins did not present evidence that the County intended that its conduct would be acted upon, nor acted in a way such that Collins had a right to believe it was so intended. Even though the County received notice of the termination, Collins did not provide evidence showing that the County accepted or agreed with the 1990 Notice of Termination. Thus, the Court concludes that the County did not intend for such reliance and rejects Collins' equitable estoppel claim presented during the bench trial. Finally, the Court finds that public policy considerations weigh in the County's favor. Any avoidance of injustice to Collins is outweighed by the adverse impact on the public interest

in conservation of these undeveloped lands.

## V. CONCLUSION

Accordingly, the Court finds that the Conservation and Scenic Easement is terminated, and that Collins prevails in his quiet title action against the County of Monterey. Nevertheless, the Court's conclusion does not change the zoning of the property. This case did not ask, and the Court has not rendered an opinion, as to how the Property should be zoned under state and county law. The Court also does not render an opinion about the De Amaral Preserve.

Collins' request for declaratory relief is GRANTED. Collins' good faith purchaser and equitable estoppel claims are DENIED. The Court will enter judgment in Plaintiff's favor on the quiet title claim.

**IT IS SO ORDERED.**

Dated: April 21, 2021 _____
NATHANAEL M. COUSINS
United States Magistrate Judge

13